WILLIAM T. KOVACIC,

        Plaintiff,

                                  Case No. 24-cv-159-bhl

   v.

WISCONSIN DEPARTMENT OF CORRECTIONS, et al.,

        Defendants.

## SCREENING ORDER

Plaintiff William T. Kovacic, who is proceeding *pro se*, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This order resolves Kovacic's motion for leave to proceed without prepayment of the filing fee and screens the complaint.

### THE MOVANT'S INDIGENCY

The Court has authority to allow a litigant to proceed without prepayment of the filing fee if it determines that (1) the litigant is unable to pay the costs of commencing the action and (2) the action is not frivolous, does not fail to state a claim, and is not brought against an immune defendant. *See* U.S.C. § 1915(a)(1), (e)(2). Kovacic reports that he is unemployed and unmarried, with no dependents, no income, receives $293 monthly from Foodshare, and owns a Subaru Outback worth $2,500. *See* Dkt. No. 2. On this record, Kovacic is sufficiently indigent for a fee waiver.

### SCREENING THE COMPLAINT

In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where

the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

**ALLEGATIONS OF THE COMPLAINT**

Kovacic is a former inmate who was incarcerated at the Adams County Jail from February 2021 to July 2021, the Dodge Correctional Institution (DCI) from July 2021 to October 2021, and the Oshkosh Correctional Institution (OCI) from October 2021 to June 2023. Dkt. No. 1, ¶¶23-25. Defendants are the Wisconsin Department of Corrections (DOC), Division of Community Corrections (DCC) "agent" Cassandra Abney, DCC "agent" Bethany Ross, Dr. Daniel LaVoie, OCI Warden Cheryl Eplett, Dr. Wheatly, Dr Daughtry, Advanced Practice Nurse Practitioner (APNP) Mohr, Dr. O'Brien, Health Services Manager (HSM) Pelky, Health Services Assistant Manager (HSAM) Ludwig, Institution Complaint Examiner (ICE) J. Freund, Sheriff Brent York, Jail Administrator Cindy Nicholson, Nurse Kohn, Adams County, Unknown Employees of Adams County Sheriff Department, Unknown Health Services Employees, and Unknown Employees of the Wisconsin Department of Corrections. *Id*., ¶¶2-18.

In 1999, Kovacic suffered a spinal injury that severely disabled him and caused muscle atrophy, pain, numbness, neurological problems, impaired gait, muscle weakness, and muscle spasms. *Id*., ¶22. At the time he was arrested, on February 16, 2021, he had multiple fractures on his left foot, for which he was prescribed a soft posterior splint, crutches, and pain medication. *Id*.,

¶26. He was also instructed to avoid weight-bearing on the food and had surgery scheduled for February 17, 2021 at Gunderson Lacrosse Orthopedics. *Id.* When Kovacic arrived at the jail that day, jail staff confiscated his soft posterior splint and crutches, denied him pain medication, and did not allow him to attend his surgery scheduled for the following day. *Id.*, ¶¶27-30. Kovacic was thus forced to walk around the jail without his splint and crutches, even though he had multiple fractures on his foot, between February 16, 2021 and March 9, 2021. *Id.*, ¶28. On March 8, 2021, Kovacic slipped and fell in the bathroom, causing additional fractures and new broken bones. *Id.*, ¶¶28, 33, & 35. Kovacic states that Sherriff York, Jail Administrator Nicholson, and Nurse Kohn were all "aware" of his medical problems because they communicated via email to the DOC/DCC the jail's inability to provide the type of medical care Kovacic needed for his spinal injury. *Id.*, ¶¶47 & 48. DCC agents Abney and Ross were aware that the jail did not have the capacity to provide the medical care Kovacic needed, yet they denied Kovacic's requests for release or furlough to attend his surgery. *Id.*, ¶30. In one email, Abney wrote to Ross that, if jail staff released Kovacic due to their inability to care for his medical needs, "I will have an arrest warrant issued and they will be forced to hold him." *Id.*, ¶48.

While at DCI, medical staff determined that Kovacic's foot was "seriously damaged" and ordered a lower bunk restriction as well as a referral to DOC Orthopedic Consultant Dr. O'Brien. *Id.*, ¶31. On the date of his appointment with Dr. O'Brien, the DOC decided to transfer Kovacic to OCI, so the appointment was rescheduled to October 2021. *Id.*, ¶¶31 & 32. In October 2021, Dr. O'Brien determined that surgical repair was necessary, so she referred him to foot specialist, Dr. Katryn Williams (not a defendant), at UW Health in Madison, WI. *Id.*, ¶¶32 & 33. Dr. Williams determined that the condition of Kovacic's foot had significantly deteriorated since his incarceration, including new broken bones and degenerative changes to the foot, so she sent Dr. Wheatly (the primary care doctor at OCI) a DOC authorization/approval for surgery. *Id.*, ¶¶33, 35, & 36. No decision was made on Dr. William's request for surgery. *Id.*, ¶34. Six months later, in April 2022, Dr. Daughtry (the new primary care doctor at OCI) discovered the request, approved the surgery, and scheduled the surgery for August 2022. *Id.*

After the surgery in August 2022, Dr. Williams ordered prescription-strength pain medication, extra pillows, ice to reduce inflammation, no weight-bearing on his foot, and access to a handicapped shower. *Id.*, ¶37. About seven days later, however, HSU staff limited his pain medication to over-the-counter acetaminophen and ibuprofen, which was not consistently

delivered. *Id*., ¶¶37 & 38. Kovacic also did not receive crutches "for days" after his surgery; did not receive a shower for about three weeks after surgery; and was repeatedly denied ice, extra pillows, and trash bags needed to cover his cast while he showered. *Id*. In December 2022, Dr. Williams ordered custom orthotics in preparation for weight-bearing. *Id*., ¶40. Kovacic followed up with HSU staff on the status of his orthotics numerous times, but they did not schedule the appropriate appointment for fitting, and Kovacic never received his orthotics. *Id*.

In January 2023, Kovacic began putting weight on his foot again, causing extreme swelling and pain. *Id*., ¶39. On March 10, 2023, APNP Mohr saw Kovacic and referred him back to UW Health. *Id*. Kovacic continued to see Dr. Williams for post-operative care following his release from custody in June 2023. *Id*., ¶41. According to Plaintiff, due to the lack of proper care while incarcerated, he will have permanent deformity, pain, and instability in his foot. *Id*. Plaintiff states that he filed numerous grievances about his medical care, but it took ICE Freund up to three months to resolve them. *Id*., ¶¶42 & 59. For relief, he seeks monetary damages. *Id*., ¶¶51 & 66.

## ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

To state a claim under the Eighth Amendment, Kovacic must allege that: (1) he had an objectively serious medical condition; and (2) the defendant was deliberately indifferent towards it. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A medical condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). A defendant is deliberately indifferent when he "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Examples of deliberate indifference include ignoring a request for medical assistance; refusing to take instructions from a specialist; persisting in a course of treatment known to be ineffective; choosing an easier and less efficacious treatment without exercising medical judgment; and delaying in treatment which serves no penological interest. *Id*. at 729-31.

Kovacic alleges that, at the time he arrived at the Adams County Jail on February 16, 2021 he was severely disabled from a spinal injury, and had fractures on his foot that required a soft posterior splint, crutches, no weight-bearing, pain medication, and surgery that was already scheduled for the following day. Kovacic alleges that Abney, Ross, York, Nicholson, and Kohn were all aware of his special medical needs because they had email communications discussing the complexity of it. Specifically, York, Nicholson, and Kohn noted through email communication that the jail did not have the medical resources to take care of Kovacic's special needs; and Abney and Ross allegedly communicated that, if the jail released Kovacic due to their inability to care for his medical needs, he would simply be rearrested and brought back to the jail immediately. Despite all of this communication and knowledge of Kovacic's special needs, Abney, Ross, York, Nicholson, and Kohn did not check-in on Kovacic's well-fare and instead allowed staff at the jail to confiscate his soft posterior splint and crutches, deny pain medication, and cancel the scheduled surgery. The medical treatment Kovacic was able to bring with him to the jail was taken away despite knowledge and discussion that the jail did not have adequate treatment or replacement options. Kovacic had to walk around the jail for almost six months on a fractured foot without a splint and crutches, which caused a slip and fall, along with additional fractures and new broken bones. Based on these allegations, Kovacic has adequately stated claims against Abney, Ross, York, Nicholson, and Kohn based on their alleged deliberate indifference to Kovacic's serious medical needs at the Adams County Jail between February 2021 and July 2021. *See e.g., Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (noting that higher authority prison officials may be liable under §1983 if they "turn a blind eye" to the violation of a prisoner's constitutional rights).

The Court will dismiss the remainder of the defendants from this case. Kovacic alleges no specific facts against Dr. LaVoie, Warden Eplett, HMS Pelky, and HSAM Ludwig. He therefore fails to allege personal involvement adequate to state a claim against these individuals. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of [others]."). Kovacic similarly does not allege any specific facts against Unknown Employees of Adams County Sheriff Department, Unknown Health Services Employees, and Unknown Employees of the Wisconsin Department of Corrections. He appears to use these titles as a placeholder for anyone who he may have interacted with at the jail, the HSU, or a DOC institution that he might have a claim against. Without specific allegations about who these individuals are and what they did or did not do, however, Kovacic

does not state claims against any of the unidentified persons. *See e.g.*, *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (noting that it is "pointless to include lists of anonymous defendants in federal court" because "this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff."). And Kovacic does not identify any "policy or custom" that allegedly violated his constitutional rights; thus, he does not state any claims against the DOC or Adams County. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

With respect to Dr. O'Brien, Dr. Wheatly, Dr. Daughtry, APNP Mohr, and ICE Freund, Kovacic alleges some generic facts, but those facts do not amount to deliberate indifference. Kovacic alleges that Dr. Daughtry and APNP Mohr referred him to a UW specialist for medical care; and that Dr. O'Brien was a specialist who received a referral from the institution. But without other facts explaining what specifically each individual did or did not do in connection with his medical care, the mere allegation that there were referrals to a specialist does not amount to deliberate indifference. Kovacic alleges that Dr. Williams sent Dr. Wheatly a surgery request that he did not sign—instead, a different doctor allegedly granted the request six months later. But, again, without other specific facts explaining the context of Kovacic's interactions with Dr. Wheatley and/or what medical care Dr. Wheatley did or did not provide, the failure to sign a surgery approval document is, at best, negligence not deliberate indifference. *See Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (noting that "deliberate indifference…requires more than a showing of negligent or even grossly negligent behavior."). Finally, Kovacic alleges that it took ICE Freund up to three months to review and resolve his various inmate complaints. But inmate complaint examiners are only liable under §1983 if they do their jobs with deliberate indifference, for example, by routinely sending each grievance to the shredder without reading it, intervening to prevent prescribed medical care, or otherwise refusing to do their jobs, leaving inmates to face risks that could be averted by faithful implementation of the grievance machinery. *Burks,* 555 F.3d at 595. Taking three months to investigate and resolve various inmate complaints, all of which involved complicated medical issues, does not amount to a refusal to do one's job or deliberate indifference. The Court will therefore dismiss from the case the DOC, Dr. LaVoie, Warden Eplett, Dr. Wheatly, Dr. Daughtry, APNP Mohr, Dr. O'Brien, HMS Pelky, HSAM Ludwig, ICE Freund, Adams County, Unknown Employees of Adams County Sheriff Department,

Unknown Health Services Employees, and Unknown Employees of the Wisconsin Department of Corrections.

Kovacic is advised that it is his responsibility to acquire summons from the Clerk's office and to serve the summons and complaint on Abney, Ross, York, Nicholson, and Kohn, consistent with Federal Rule of Civil Procedure 4. Kovacic may request that the Court order service through the U.S. Marshals. *See* Fed. R. Civ. P 4(b)(3) ("At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."). Kovacic should also be aware that, if he makes such a request, he would still be responsible for paying $8.00 per item mailed, *see* 28 U.S.C. § 1921(a), because the Court has no ability to waive this waiver-of-service packages fee. Kovacic is warned that failure to serve the summons and complaint will likely result in dismissal of this case based on failure to prosecute.

## CONCLUSION

The Court finds that Kovacic may proceed on an Eighth Amendment claim in connection with allegations that Abney, Ross, York, Nicholson, and Kohn were deliberately indifferent to his serious medical needs at the Adams County Jail between February 2021 and July 2021.

**IT IS HEREBY ORDERED** that Kovacic's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Wisconsin Department of Corrections, Dr. LaVoie, Warden Eplett, Dr. Wheatly, Dr. Daughtry, APNP Mohr, Dr. O'Brien, HMS Pelky, HSAM Ludwig, ICE Freund, Adams County, Unknown Employees of Adams County Sheriff Department, Unknown Health Services Employees, and Unknown Employees of the Wisconsin Department of Corrections are **DISMISSED** from the case.

Dated at Milwaukee, Wisconsin on April 17, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge